No. 13-30082

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MICHAEL PAUL GRADNEY,

Defendant – Appellant.

**REPLY BRIEF OF APPELLANT**

Appeal from the United States District Court
Western District of Washington at Seattle
The Hon. James L. Robart, United States District Judge
D.C No. 2:11-CR-00363-JLR

THOMAS M. KUMMEROW
Attorney for Appellant
Washington Appellate Project
1511 Third Avenue, Suite 701
Seattle, Washington 98101
(206) 587-2711
(206) 587-2710 fax

## TABLE OF CONTENTS

I.  ARGUMENT ................................................................................... 1

    THIS COURT'S RECENT DECISION IN *GRANDBERRY* ESTABLISHES WHY THE SEARCH WARRANT FOR THE AUBURN HOUSE LACKED PROBABLE CAUSE HERE, THUS THE FRUITS OF THE SEARCH PURSUANT TO THAT WARRANT MUST BE SUPPRESSED ..................................... 1

    1.  The officers' observations regarding the Auburn House failed to establish probable cause to search that location. ................................... 1

    2.  The good faith exception did not apply. ........................................... 7

II.  CONCLUSION AND RELIEF SOUGHT ................................................. 8

CERTIFICATE REGARDING COMPLIANCE WITH ................................. 9

CERTIFICATE OF SERVICE .................................................................. 10

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Clark,* 31 F.3d 831 (9th Cir.1994) ......................................... 7

*United States v. Crews,* 502 F.3d 1130 (9th Cir.2007) .................................... 1

*United States v. Grandberry*, ___ F.3d ___, 2013 WL 5184439 (9th Cir., September 17, 2013) ........................................................................... passim

*United States v. Hill,* 459 F.3d 966 (9th Cir.2006) .......................................... 1

*United States v. Jennen*, 596 F.3d 594 (9th Cir.2010) .................................... 1

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) .................................................................................................... 7

*United States v. Luong,* 470 F.3d 898 (9th Cir.2006) ..................................... 7

*United States v. Rubio,* 727 F.2d 786 (9th Cir.1983) ...................................... 1

*United States v. Tan Duc Nguyen*, 673 F.3d 1259 (9th Cir.2012) ................... 1

*Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) .................................................................................................... 6

I.  ARGUMENT

**THIS COURT'S RECENT DECISION IN *GRANDBERRY* ESTABLISHES WHY THE SEARCH WARRANT FOR THE AUBURN HOUSE LACKED PROBABLE CAUSE HERE, THUS THE FRUITS OF THE SEARCH PURSUANT TO THAT WARRANT MUST BE SUPPRESSED**

1.  <u>The officers' observations regarding the Auburn House failed to establish probable cause to search that location</u>.  The existence of probable cause turns on whether the search warrant affidavit "establish[ed] a reasonable nexus between the crime or evidence and the location to be searched."  *United States v. Jennen*, 596 F.3d 594, 598 (9th Cir.2010), *quoting United States v. Crews,* 502 F.3d 1130, 1136-37 (9th Cir.2007).  For a finding of probable cause to satisfy this nexus requirement, there must be a fair probability both that a crime has been committed and that evidence of its commission will be found in the location to be searched.  *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1263 (9th Cir.2012); *United States v. Hill,* 459 F.3d 966, 970-72 (9th Cir.2006); *United States v. Rubio,* 727 F.2d 786, 793-95 (9th Cir.1983).

This Court's recent decision in *United States v. Grandberry*, ___ F.3d ___, 2013 WL 5184439 (9th Cir., September 17, 2013), illustrates why the warrant here lacked probable cause to search the Auburn house.  The police here alleged that the Auburn house was Mr. Gradney's residence.  ER 66-67;

1

Government's Brief at 23. This allegation was based upon the police officers' observations of the gold Cadillac parked in front of the Auburn house at night and in the morning during a one month period as well as observing the Cadillac leave the Auburn house and make what the officers alleged were narcotics deliveries. ER 66-68.

Substantially similar type of conduct was determined to be insufficient to establish probable cause that an apartment was the defendant's residence for the purposes of a parole search. *Grandberry*, 2013 WL 5184439 at 1-2, 10. In *Grandberry*, the defendant was on parole and listed a different address with his parole officer as his residence. Nevertheless, based upon police surveillance of this apartment, the police assumed the apartment was his residence and searched it pursuant to a parole search. The district court granted Mr. Grandberry's motion to suppress, finding the police failed to establish probable cause to believe the apartment was his residence. *Id.* at 1-2. This Court affirmed that determination. *Id.* at 10.

This Court ruled that the police surveillance was not enough to establish the requisite probable cause:

> The Officers focused their surveillance of Grandberry almost exclusively on the Arlington apartment building, which they visited on a number of occasions between January 14 and January 25, at various times, usually between noon and 10 p.m.

2

> While parked outside the building, they observed Grandberry enter the building using "keys he held" at least six times, and perhaps ten. Except once, Grandberry entered the building alone; on one occasion, he entered with a female companion. Another time the Officers saw the same woman arrive at the building alone. On some of the occasions on which the Officers observed Grandberry go into the building, they saw "movement or activity through the window of [a] second-floor unit" just after Grandberry entered, and at least once they saw Grandberry "looking out of the window of that apartment unit."
>
> One officer conducted surveillance after 10 p.m. but never saw Grandberry at the Arlington apartment building past ten or during the early morning. None of the Officers checked the names on the building's mailboxes to see if Grandberry received mail there. None of them ever observed him carrying groceries, laundry, newspapers, or mail. None asked any neighbors whether Grandberry lived there; examined the building's trash for whether it contained anything of Grandberry's; or investigated who leased or lived in the Arlington apartment.
>
> Once, the Officers saw Grandberry leave the Arlington apartment building, approach a parked vehicle, hand a man a white paper bag, then re-enter the building. Other officers detained the man, who was carrying $9,000 in cash. The man was not charged with any offense.

*Grandberry*, WL 5184439 at 1-2.

Based upon these facts, this Court ruled that the police failed to establish the apartment was Mr. Grandberry's residence allowing a parole search without a warrant:

> Third, Grandberry's repeated presence at the Arlington apartment is certainly entitled to some weight in the probable cause analysis. We have emphasized several times, however, that a parolee's presence at a residence, even if frequent, does

3

not, standing alone, establish probable cause that the parolee lives there. Our cases distinguish between evidence that a parolee had "visited" a particular residence and evidence that a parolee " lived there." *Howard*, 447 F.3d at 1267 (emphasis in original). Even when there is evidence that the parolee has "spent the night there occasionally," we have concluded that such evidence is "insufficient" to establish residence. *See id*. at 1262.

…

Here, the Officers never observed any signs that Grandberry stayed overnight at the Arlington apartment, even though some of the surveillance was conducted late in the evening. Nor did anyone - including the confidential informant who tipped off the Officers as to Grandberry's drug activity—report that Grandberry lived at the Arlington apartment. *Cf. Franklin*, 603 F.3d at 654-55 (holding that probable cause existed in part because of confirmation by a motel clerk, immediately before the search, that the defendant had "personally rented" the motel room in question and was "currently" staying there); *Mayer*, 560 F.3d at 957 (holding that two tips, including one from a reliable informant, that a defendant lived at a particular residence (at which he also was known to have previously resided) supported probable cause as to residence).

Moreover, in cases in which we have concluded that police officers had probable cause as to residence, they "had directly observed something that gave them good reason to suspect that the parolee was using his unreported residence as his home base." *Cuevas*, 531 F.3d at 734; *Howard*, 447 F.3d at 1265-66. Such indicia of a "home base" have included "taking out the garbage," and "bringing in" and "carrying" out "laundry" and "dry cleaning." *Dally*, 606 F.2d at 862. Here, the Officers did not report seeing Grandberry conduct any such activities. In their nearly two weeks of surveillance, the only thing that they saw him carry in or out of the apartment was a substantial sum of cash - a fact which, as the district court concluded, might be indicative of his use of the Arlington apartment as a base from which "to conduct drug business," but did not suggest that the apartment was his residence.

4

*Id.* at 8-9.

Further, the fact Mr. Grandberry used a key to enter the apartment also added little to the probable cause analysis:

> Here, the Officers saw Grandberry using a key to enter the residence in question more times than in *Harper* (although with about the same frequency, given the period of observation). The number of times Grandberry used the key, however, is of relatively little additional probative value in assessing whether the apartment in question was Grandberry's residence, as compared to the fact that, as in *Harper*, someone entrusted him with a key in the first place. But people other than residents are often entrusted with access to homes - for example, people performing housekeeping or repair work, or childcare or in-home health services. Here, as the district court noted, key access is as consistent with the apartment's use as the location of a drug business as it is with its being Grandberry's residence.
>
> Grandberry's key access to the Arlington apartment would not, without more, lead a reasonably prudent person to believe that he lived there. And the other factors - especially the considerations that Grandberry was not seen at the Arlington apartment during the Officers' nighttime surveillance, and there was no basis for doubting that Grandberry lived where he had reported he did, on South Manhattan Place - point strongly in the opposite direction. We therefore conclude that under our "relatively stringent" standard, the Officers lacked probable cause to conclude that Grandberry lived at the Arlington apartment that they searched.

*Id.*

The affidavit failed to establish the Auburn House was Mr. Gradney's residence as alleged by the Government. ER 66-67; Government's Brief at 23. Here, as in *Grandberry*, the police failed to determine whether Mr.

5

Gradney was a resident of the Auburn House or merely a visitor. None of the officers ever observed Mr. Gradney carrying groceries, laundry, newspapers, or mail. None of the officers asked any neighbors whether Mr. Gradney lived there. No police officer examined the house's trash to determine whether it contained anything of Gradney's. None of the officers observed any signs that Gradney stayed overnight at the Auburn house, even though some of the surveillance was conducted late in the evening.

While it is true there is a different standard between a parole search of a parolee's residence and a warrant for a residence based upon probable cause. But here, there simply is no difference: in both *Grandberry* and here, the police claimed the location was the *residence* of the individual. Given that, the analysis in *Grandberry* directly applicable to the search here. As a result, the warrant lacked probable cause.

In addition, since *Grandberry* stand for the proposition that the warrant lacked probable cause, all fruits of the search pursuant to that warrant must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As such, the guns, small amount of drugs, money, and documents with Mr. Gradney's name on them seized in the search of the house, and any other items must be suppressed.

6

2. <u>The good faith exception did not apply</u>.  For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner.  *United States v. Clark,* 31 F.3d 831, 835 (9th Cir.1994).  The affidavit "must establish at least a colorable argument for probable cause" for the exception to apply.  *United States v. Luong,* 470 F.3d 898, 903 (9th Cir.2006).

In light of this Court's decision in *Grandberry*, the officers' reliance on the warrant was entirely unreasonable.  As in *Grandberry* the officers' observations simply did not support a conclusion that the Auburn House was Mr. Gradney's residence.  Since that the fact was the basis for the finding of probable cause, the warrant was completely lacking in probable cause.

Since the warrant was so lacking in probable cause the *Leon* good faith exception does not apply.  *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  As a consequence, the items seized and used as evidence at trial should be suppressed.

## II.  CONCLUSION AND RELIEF SOUGHT

For the reasons stated in the previously filed Brief of Appellant as well as this reply brief, Michael Gradney requests this Court reverse his convictions.

DATED this 9th day of October 2013.

Respectfully submitted,

   s/Thomas M. Kummerow_____
THOMAS M. KUMMEROW (WSBA 21518)
Washington Appellate Project
1511 Third Avenue, Suite 701
Seattle, Washington 98101
(206) 587-2711
fax (206) 587-2710
tom@washapp.org
Attorneys for Appellant

# CERTIFICATE REGARDING COMPLIANCE WITH

# FRAP 32 AND CIRCUIT RULE 32

This Reply Brief of Appellant is proportionately spaced using 14-point Times New Roman font.

I certify that the brief, exclusive of the Table of Contents and Table of Authorities, does not exceed 7000 words. The brief contains approximately 1837 words (word count by Microsoft Word).

  _s/Thomas M. Kummerow__
  THOMAS M. KUMMEROW

## CERTIFICATE OF SERVICE

I, Thomas M. Kummerow, certify that on October 9, 2013, I electronically filed the attached Reply Brief of Appellant and served the same on counsel for the United States, by using the appellate CM/ECF filing system.

Finally, I certify I mailed a copy of the Reply Brief of Appellant to:

Michael Gradney
Reg # 41755-086
FCI Sheridan
Federal Correctional Institution
P.O. Box 5000
Sheridan, Oregon 97378

                                        s/Thomas M. Kummerow__
                                        THOMAS M. KUMMEROW